JUDSON v. PRATT.

1. LIMITATION OF ACTIONS — INDORSEMENTS ON NOTES — ADMISSIBILITY.

3 Comp. Laws 1915, § 12335, does not make indorsements of payments on notes incompetent as evidence, but declares them to be insufficient in themselves to take the case out of the operation of the statute of limitations.

2. SAME—APPEAL AND ERROR—ORDER OF PROOF.

In an action on certain promissory notes claimed by defendant to be barred by the statute of limitations, defendant's objection to the introduction of the notes with

indorsements of payments thereon will not be considered by the appellate court, where, after the objection, other evidence was introduced rendering them admissible; the objection going merely to the order of proof.

3. SAME—INDORSEMENTS ON NOTES—EVIDENCE—ADMISSIBILITY.

In such action, certain exhibits, properly identified, tending to show that defendant had sold certain produce to the payee and received payment therefor partly by indorsements on the notes, and partly by check, which was dated the same day as the indorsements, *held*, admissible.

4. APPEAL AND ERROR—WEIGHT OF EVIDENCE FOR JURY.

The weight and sufficiency of the evidence, *held*, peculiarly questions of fact for the jury.

Error to Genesee; Black (Edward D.), J. Submitted October 23, 1919. (Docket No. 34.) Decided December 22, 1919.

Assumpsit by Edna M. Judson, administratrix of the estate of Fred Judson, deceased, against William Pratt upon certain promissory notes. Judgment for plaintiff. Defendant brings error. Affirmed.

*James H. McFarlan* (*Farley & Selby*, of counsel), for appellant.

*Carton, Roberts & Stewart*, for appellee.

Plaintiff, as administratrix of her husband's estate, brought suit against defendant upon three promissory notes, which, with their indorsements, were as follows:
Exhibit 1:

"$40.00.		LINDEN, July 24th, 1909.

"Sixty days after date I promise to pay to Fred Judson or order forty dollars for value received, with use at 6%.

[Signed] "WILLIAM PRATT."

Indorsed on the back of Exhibit 1 is the following:

"Sept. 23, 1913. Received fifty dollars on the within for interest."

Exhibit 2:

"$600.00.                    LINDEN, October 28, 1909.
"On or before six months after date I promise to pay to Fred Judson or order, six hundred dollars, with use at 6 per cent.

[Signed]  "WILLIAM PRATT."

On the back of Exhibit 2 is indorsed the following:

"Sept. 23, 1913.  Received $26.91 on the within to apply on interest."

Exhibit 3:

"$75.00.                         November 8, 1909.
"On or before thirty days after date I promise to pay to Fred Judson or order, seventy-five dollars, use 6 per cent.

[Signed]  "WILLIAM PRATT."

On the back of Exhibit 3 is indorsed the following:

"Sept. 23, 1913.  Received twenty-five dollars on the within for interest."

The plea was the general issue with notice of the statute of limitations and a further notice of set-off, accompanied by a bill of particulars of said alleged set-off. Upon the trial defendant withdrew his plea of set-off and the case went to hearing upon the sole defense that recovery upon the notes in suit was barred by the statute of limitations. The notes bore date in July, October and November, 1909, and suit was not begun until November 6, 1917, so that, unless the indorsements upon the back of the notes bearing date September 23, 1913, evidenced voluntary payments thereon made by the defendant to the payee in the notes, they were clearly barred by the statute. At the beginning of the trial the notes in question were, over the objection of defendant's counsel, admitted in evidence, and, likewise, over objection, the evidence of George H. Judson, a brother and one-time partner of plaintiff's decedent, to the effect that the

indorsements upon said notes were in the handwriting of plaintiff's decedent, was received. Plaintiff's counsel were thereafter permitted to show by the witness, George H. Judson, from the car book record kept by Judson Bros., the following purchases from and deliveries by defendant Pratt:

> "April 25, 1913........................20,840 lbs. straw
> June 21st, 1913.......................17,490 lbs. straw
> September, 1913 .....................17,870 lbs. hay
> September 13, 1913..................21,330 lbs. hay"

Plaintiff's counsel also were permitted over objection to introduce Exhibits 4 and 5 as follows:

"Exhibit 4.

Gaines　　　　JUDSON BROTHERS' ELEVATORS　　　　Linden

Hay, Grain, Beans, Wool, Farm Machinery,
Cement, Lime, etc.
Union Tel. No. 24.
Linden, Michigan.

Sept. 23, 1913.
179.84
25

```
             21330 lbs.
             17870                      17490  straw

             39200                      20840

                 9                      38330

         2)352800                         550

           176.40                      191650
           105.35                      191650

           281.75                   2)2107150

           179.84                      105.35

Indorsement 101.91
             75

             26.91"
```

208—Mich.—19.

Exhibit 5.

"HOLLY, MICH., Sept. 23, 1913.    No.....
"FIRST STATE & SAVINGS BANK, 74-391.
"Pay to Wm. Pratt or bearer, $179.84, one hundred
seventy-nine 84/100 dollars.

"JUDSON BROTHERS."

(Bank Stamp—Paid, Sept. 26, 1913.)

Touching Exhibit 4, George H. Judson testified as
follows:

"*Q.* What is that, Mr. Judson, Exhibit 4?
"*A.* Why, it is a settlement between Mr. Pratt and
Judson Brothers, for a certain amount of hay and
straw bought.
"*Q.* And, will you state what its date is?
"*A.* September 23, 1913.    *   *   *
"*Q.* Mr. Judson, were you interested in the mat-
ter of that computation yourself?
"*A.* Yes, sir; I was.
"*Q.* Now, what is that Exhibit 4?
"*A.* It is a settlement of hay and straw with Mr.
Pratt.
"*Q.* How much money was figured in that compu-
tation that was due for hay and straw, how many
dollars and how many cents?
"*A.* $281.75.
"*Q.* I now show you Exhibits 1, 2 and 3, and ask
you to testify what the date of the indorsements are?
"*A.* The date of each indorsement is September 23,
1913.
"*Q.* Now, does it show the fact of any check being
given or anything of that kind, or any amount of
money paid to anybody?
"*A.* It does.
"*Q.* What does it show about that?
"*Mr. McFarlan:* Your honor, I object to the form
of the question.   I would like to have the witness read
what that paper contains and not what the inference
from it may be.
"*Q.* Read that paper, Mr. Judson.
"*A.* Well, in the first place, there seems to be 39,200
pounds of hay.
"*Mr. McFarlan:* Does it say 'hay?'

"*A*. No, it does not say 'hay.'

"*Q*. Well, just read what is on there, George.

"*A*. 21,330 pounds.

"*Q*. Yes, sir.

"*Q*. 17,870; 39,200. Those pounds are multiplied by nine, and the result is divided by two. That gives—

"*Q*. What result?

"*A*. The result is $176.40.

"*Q*. What are the rows of figures?

"*A*. On the right hand side of the paper, 17,490 pounds of straw; 20,840 pounds. Add it together makes it 38,330. That same is multiplied by 550 and the result is divided by two, giving $105.35.

"*Q*. $135.00, is it?

"*A*. 135—five.

"*Q*. Is it pointed off in decimals?

"*A*. Yes, sir; it is pointed off.

"*Q*. What decimal is where?

"*A*. Between the thirty-five and the hundred five.

"*Q*. Is there any computation or anything occurring on that paper where $178.00 and $105.00 is added together or anything of the kind?

"*A*. There is.

"*Q*. What does it say about that?

"*A*. $176.40 and $105.35 are added together, and there the dollar sign is used.

"*Q*. How much?

"*A*. $281.75.

"*Q*. Is there anything else on the paper?

"*A*. Over at the side, there is subtracted $179.84.

"*Q*. $178.94?

"*A*. Yes, sir.

"*Q*. Is there any further computation thereon?

"*A*. That leaves $101.91.

"*Q*. Is that indicated or is it identified by any word?

"*A*. Yes, sir.

"*Q*. What does it say?

"*A*. The word 'indorsement.'

"*Q*. Where is the word 'indorsement' written?

"*A*. At the left of the sum.

"*Q*. And that sum is what?

"*A*. $101.00—$101.00.

"*Mr. Selby:* Now, so that the record may show, your honor, we having made objection all the way through, I now move to strike the exhibit and all evi-

dence given in regard to it from the record as incompetent and immaterial.

"*The Court:* No, it may stand.

"*Q.* I have shown counsel Exhibit 5. I now offer Exhibit 5 in evidence.

"Exhibit 5.

"Holly, Michigan, September 23, 1913. The First State Savings Bank, pay to William Pratt, or bearer, $179.84," in figures; "one hundred seventy-nine and 84/100 dollars," in writing. Signed, "Judson Brothers." And, indorsed on the back is "William Pratt."
* * *

"*Q.* Now, Mr. Judson, taking into consideration the amount of the indorsement, made on Exhibits 1 and 2, and the amount of the check, marked Exhibit 5, and I ask you whether or not those indorsements total, together with the check in the aggregate, indicate such a sum as was due on Exhibit 4? * * *

"*A.* I say that the check, for $178.84, was given to Pratt and cashed by Pratt."

And on cross-examination:

"*A.* I know that hay was bought of William Pratt and delivered by William Pratt's teams.

"*Q.* You don't know, however, what farm it came from?

"*A.* No, I could not tell you.

"*Q.* Could not tell anything about that?

"*A.* I would not tell you that, if I did not know.

"*Q.* That is all. * * *

"*Q.* That is all, just a moment, Mr. Judson. You do not know, of your own knowledge, of Mr. Pratt consenting to any indorsements?

"*A.* No, sir; I do not."

Plaintiff, administratrix, was permitted to testify that she found Exhibit 4 together with the notes in the safe where she had put it in the lifetime of her husband.

Defendant offered no testimony. Each party moved for a directed verdict. Both motions were overruled, the court submitting the case to the jury under a charge in the course of which he said:

"And you may take the notes and the check, if you have not done so, and compare them, as to whether or not the same man received the money on the check that signed the note, which would be evidence to you of whether or not Mr. Pratt received the $179.84, which is borne out as the payment in the check. And if Mr. Pratt received the $179.84, whether Mr. Pratt knew—was present and knew that the balance of the amount of that hay and straw, to wit: $101.91, was credited to his account and indorsed upon these three notes.

"And I charge you, if you find that he was present and knew that that was being credited, that he was being credited with $101.91 upon his notes, receiving the balance of $179.84 as payment in full for his hay and straw, then you may take that into consideration, as to whether or not Mr. Pratt knew at that time that the indorsements were made upon the notes."

The jury returned a verdict in favor of the plaintiff.

BROOKE, J. (*after stating the facts*). Section 12335, 3 Comp. Laws 1915, provides:

"Nothing contained herein shall alter, take away or lessen the effect of a voluntary payment of any principal or interest, made by any person; but no indorsement or memorandum of any such payment written or made upon any promissory note, bill of exchange, or other writing by or on behalf of the party to whom such payment shall be made, or purport to be made, shall be deemed sufficient proof of the payment, so as to take the case out of the operation of the provisions of this chapter."

The first assignments of error argued by defendant are those relating to the admission of the notes in question in evidence. The case of *Rogers* v. *Anderson,* 40 Mich. 290, is cited, where it is said:

"Unexplained indorsements of payments could not be received as evidence, so as to take the case out of the operation of the statute."

Counsel for defendant emphasize the words: "Could not be received as evidence." These words should be read with the context, and, so read, the meaning simply was that the statute itself declares that the indorsements themselves are not sufficient proof of payment so as to take the case out of the operation of the provisions of the statute. The statute does not make the indorsements incompetent as evidence but declares them to be insufficient. In any event the objection goes merely to the order of the proof, as after the admission of other evidence in the case the notes with their indorsements would have been admissible.

A second group of assignments of error relative to Exhibits 4 and 5 are argued and it is asserted that all testimony touching the said exhibits should have been excluded, counsel saying:

"Without any proof of Pratt's presence; without proof of any knowledge on Pratt's part; without any proof of Pratt's assent, the plaintiff, against defendant's objection, was allowed to call this proof of payment sufficient to take the case out of the statute."

We are of opinion that Exhibits 4 and 5 were admissible in evidence; that they were properly identified by the witness, George H. Judson, and that his testimony touching the same was competent. Its weight was of course for the jury. Whether the exhibits in question bearing date the same day as the indorsements upon the notes, taken in connection with the defendant's indorsement of the check, Exhibit 5, and the payment of said check three days later, were sufficient evidence that defendant had voluntarily paid plaintiff's decedent both the amount of the check and the amount shown by the indorsements on the notes, by the delivery of this hay and straw, was peculiarly a question of fact for the determination of the jury.

Complaint is made of some portions of the charge

of the court. Taken as a whole, and, particularly, in view of the part thereof quoted, we believe that the jury were not misled as to the controlling question of fact to be determined by them.

The judgment is affirmed.

Bird, C. J., and Sharpe, Moore, Steere, Fellows, Stone, and Kuhn, JJ., concurred.