CITY OF FLINT v TAKACS

Docket No. 96506. Submitted June 8, 1987, at Lansing. Decided
December 28, 1989.

The City of Flint, seeking to acquire a certain parcel of realty,
brought an action pursuant to the Uniform Condemnation
Procedures Act in the Genesee Circuit Court. The city named
as defendants two groups of individuals. One group, comprised
of Elmer Takacs and others, were the grantees on a deed to the
property given by the Department of Natural Resources, which
had earlier acquired title to the property following the nonpay-
ment of property taxes. The other group of defendants, com-
prised of Mildred Farquharson and others, were the record
owners of the property prior to the DNR deed. Farquharson filed
a cross-claim against the Takacs group, alleging that, because
notice to her group of their right of redemption following the
vesting of title in the state had failed to meet statutory require-
ments, the Takacs group's title was invalid. The trial court,
Valdemar L. Washington, J., granted summary disposition in
favor of the Farquharson group on the cross-claim against the
Takacs group, which then filed an appeal.

The Court of Appeals *held:*

1. Although the trial court erroneously relied on MCL
211.140; MSA 7.198 in making its decision, it correctly ruled
that notice of the right of redemption was deficient. Under the
controlling statutory provision, MCL 211.131e; MSA 7.190(3),
notice must be given to all owners of a significant interest in
the property. Here, the state merely notified two record owners
and failed to notify the other record owners, most of whom
were tenants in common whose individual stakes amounted to
less than two percent in the entirety of the parcel. The state
therefore failed to comply with the proper statutory notice
requirements.

2. Laches on the part of the record owners does not serve to

REFERENCES

Am Jur 2d, Eminent Domain § 131; State and Local Taxation
§§ 900, 1004, 1010, 1011, 1015.

See the Index to Annotations under Eminent Domain; Taxes; Tax
Sales; Vested Rights.

excuse the state's failure to provide the record owners with proper notice of their right of redemption.

3. Given the failure to effect proper notice of the right of redemption, which notice is a prerequisite to the expiration of the redemption period, the record owners' redemption rights remain extant and the title held by the grantees under the DNR deed remains subject to the record owners' redemption rights. However, there is no land left for the record owners to redeem since the Uniform Condemnation Procedures Act provides that title becomes vested in the agency seeking condemnation as of the date of the filing of the complaint if a motion to review necessity is not timely filed. The right of redemption attaches solely to the just compensation award. On remand, the record owners shall be entitled to the compensation award to the exclusion of the grantees under the DNR deed, assuming that the record owners first exercise their redemption rights.

Remanded for further proceedings.

1. TAXATION — PROPERTY TAXES — TAX DEEDS — NOTICE TO OWNERS.

All owners of a significant property interest in land with a state equalized valuation of $1,000 or more the title to which has been caused by the State Treasurer to be conveyed by deed to the State of Michigan on or after May 4, 1976, by virtue of court decree and nonredemption following the nonpayment of property taxes must be notified that a hearing before the Department of Treasury shall be held to allow them to show cause as to why the deed to the state should be canceled (MCL 211.67a, 211.131e; MSA 7.112[1], 7.190[3]).

2. TAXATION — PROPERTY TAXES — TAX DEEDS — NOTICE OF REDEMPTION — LACHES.

Failure by the State of Michigan to properly notify the record owners of realty, the title to which has been deeded to the state following the nonpayment of property taxes, with regard to the owners' right of redemption is not excused by laches on the part of such owners (MCL 211.131e; MSA 7.190[3]).

3. EMINENT DOMAIN — UNIFORM CONDEMNATION PROCEDURES ACT — TITLE TO PROPERTY.

Under the Uniform Condemnation Procedures Act, title to the realty sought to be condemned becomes vested in the agency seeking condemnation as of the date of the filing of the complaint if a motion to review necessity is not timely filed (MCL 213.57; MSA 8.265[7]).

*Stark, Reagan & Finnerty, P.C.* (by *Joseph C. Bird*), for Mildred C. Farquharson.

*Ference, Ference & Cicirelli, P.C.* (by *Sandra A. Ference Cicirelli*), for Wai Kit Linn.

*Curt Ollikainen,* for Charles J. Hill et al.

*Samuel A. Ragnone,* for Elmer Takacs et al.

Before: GRIBBS, P.J., and HOLBROOK, JR. and W. MOORE, JR.,* JJ.

HOLBROOK, JR., J. Defendants-appellants, claimants of a parcel of realty through a deed granted by the Department of Natural Resources, appeal from an order of the circuit court determining that the other defendants, the record title holders of the same premises, were the true owners.

This appeal arose from proceedings instituted by the City of Flint to acquire the parcel pursuant to the Uniform Condemnation Procedures Act, MCL 213.51 *et seq.*; MSA 8.265(1) *et seq.* In an addendum to its complaint, the city listed as "interested parties" the record title holders as well as the grantees of a deed from the DNR. The question of the ownership rights of the record owners vis-a-vis the holders of the DNR deed was injected into the proceedings when Mildred Farquharson, one of the record owners, filed a cross-claim against Thomas R. Bugbee, Elmer Takacs, Patrick Creighton, and Jack Johnson, the claimants through the DNR deed, requesting a determination that the title of those claimants was void. Since title to the parcel has already been vested in the city pursuant to a stipulation of the parties, the instant dispute is pertinent only to the entitlement of defendants to just compensation to be awarded for the taking of the parcel.

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

Although unclear from the record below, it appears that the circuit court ruling decided a motion for summary disposition of Farquharson's cross-claim, brought by the claimants through the DNR deed pursuant to MCR 2.116(C). Farquharson and some of the other record owners urged below that the DNR deed was void by reason of deficient notice. Neither the parties nor the circuit court specified the subsection of the court rule under which the case was decided. Since the pleadings on their face do not appear to indicate a legal entitlement of the record owners to a judgment declaring the validity of their ownership interests, we assume that the motion was decided pursuant to MCR 2.116(C)(10) and that judgment was awarded to the record owners, the parties opposing the motion, pursuant to MCR 2.116(I)(2). Summary disposition can be granted pursuant to MCR 2.116(C)(10) only if it is demonstrated by affidavits and other documentary evidence that there is no genuine issue of fact and that the party in whose favor judgment is granted is entitled to judgment as a matter of law. The court must draw all inferences in favor of the party against whom judgment is sought and must give that party the benefit of any reasonable doubt. *Hagerl v Auto Club Group Ins Co,* 157 Mich App 684, 686-687; 403 NW2d 197 (1987), lv den 428 Mich 900 (1987).

The factual record developed below was sparse. See MCR 2.116(G). Documents submitted show that Wai Kit Linn and Frank Linn, two of the record owners, were given notice that the state attained ownership of the parcel on May 1, 1979, for nonpayment of 1975 taxes and that a hearing would be conducted on April 28, 1980, to allow persons with a significant interest in the parcel to show cause why the state's deed should be set aside. An employee of the Genesee County Trea-

surer's Office averred that none of the other record owners were given this notice. By document entitled "DEED under Section 131, of the General Tax Law, being Act 206, P.A. 1893, as amended," dated October 16, 1981, the DNR transferred its interest in the parcel to defendants Bugbee, Takacs, Creighton, and Johnson.

Both the circuit court and the record owners posited that claimants of title through the DNR deed failed to comply with the notice provisions of MCL 211.140; MSA 7.198, thus rendering the title defective. We disagree because different statutory provisions of the General Property Tax Act are controlling when lands subject to a tax sale are bid off to the state and the state subsequently becomes vested with absolute title after the expiration of the redemption period provided by MCL 211.74; MSA 7.120. See MCL 211.70; MSA 7.115 and MCL 211.67; MSA 7.112. Once the interest of the record owners was extinguished, the DNR was empowered to sell those lands pursuant to MCL 211.131; MSA 7.188, conveying good title free of encumbrances derived from the prior chain of title. *Municipal Investors Ass'n v City of Birmingham,* 298 Mich 314; 299 NW 90 (1941), aff'd 316 US 153; 62 S Ct 975; 86 L Ed 1341 (1942). This procedure is to be distinguished from the issuance of a tax deed to a private purchaser after a tax sale, a procedure that requires the purchaser to perfect his title by the giving of a notice of reconveyance in accordance with MCL 211.140; MSA 7.198. See also MCL 211.142; MSA 7.200. When the former procedure applies because the land has been bid off to the state, MCL 211.140(1); MSA 7.198(1) is inapplicable by its own terms. See also *Dow v Michigan,* 396 Mich 192, 197; 240 NW2d 450 (1976).

The General Property Tax Act does make sepa-

rate provision for a right of redemption of land bid off to the state. This right of redemption may be exercised during the period following the vesting of title in the state, but ending prior to the first Tuesday in November thereafter. MCL 211.131c(1); MSA 7.190(1)(1). The record owner is entitled to notice in accordance with MCL 211.131e; MSA 7.190(3), which prior to amendments enacted under 1984 PA 406 not applicable to the issues raised here provided:

> (1) The redemption period on those lands deeded to the state pursuant to section 67a[1] on or after May 4, 1976, which have a state equalized valuation of $1,000.00 or more shall be extended until owners of a significant property interest in the lands have been notified of a hearing before the department of treasury. Proof of notice to those persons and notice of the hearing shall be recorded with the register of deeds in the county in which the property is located.
>
> (2) The hearing shall be held to allow these owners to show cause as to why the tax sale and the deed to the state should be canceled for any of the reasons specified in section 98.[2] The hearing shall be held after the expiration of the redemption periods provided by section 131c.[3]
>
> (3) Following expiration of the redemption periods provided by section 131c, property may be redeemed up to 30 days following the date of hearing provided by this section by the payment of the amounts provided for in subsection (4) and in section 131c(1),[4] plus an additional penalty of 50% of the tax upon which foreclosure was made. This additional penalty shall be credited to the delinquent property tax administration fund. A re-

---

[1] MCL 211.67a; MSA 7.112(1).

[2] MCL 211.98; MSA 7.151.

[3] MCL 211.131c; MSA 7.190(1).

[4] MCL 211.131c(1); MSA 7.190(1)(1).

demption under this section shall reinstate title as provided in section 131c(4).[5]

The owner is thus afforded an extension of the redemption period up to thirty days following the hearing. The question in this case is whether the statutorily contemplated notice was given and whether any deficiency in the notice invalidates the title claimed through the DNR deed.

It is clear from the contents of the notices mailed to Wai Kit and Frank Linn that compliance with the notice provision was attempted, but the uncontroverted affidavit indicates that no other notices were mailed. The claimants through the DNR deed contend that the remaining fractional interests, characterized as tenancies in common, most of which individually amounted to less than a two percent stake in the entirety of the parcel, were so insignificant that their holders need not be given notice.

The record owners maintain that the decision in *Dow, supra,* demonstrates the inadequacy of the notice actually given here. Although *Dow* pertains to the notice required for circuit court proceedings to foreclose a tax lien, MCL 211.66; MSA 7.111, for the tax sale itself, MCL 211.61a; MSA 7.106, and for the one-year right of redemption following the tax sale, MCL 211.73c; MSA 7.119(2), none of which are at issue here, the due process concerns raised in *Dow* would apply to the instant case with equal force. We think that application of the notice requirements should insure that those due process concerns are adequately protected.

The Court in *Dow* held that notice reasonably calculated to apprise a landowner of the tax lien foreclosure proceedings and of his opportunity to cure any default must be accorded those having

---

[5] MCL 211.131c(4); MSA 7.190(1)(4).

"significant" property interests protected by the Due Process Clause. *Id.,* p 204. The Court further concluded that a plaintiff's status as a legal title holder was a sufficient property interest to trigger due process protections. *Id.* The Court's reliance on *Board of Regents of State Colleges v Roth,* 408 US 564; 92 S Ct 2701; 33 L Ed 2d 548 (1972), in arriving at this conclusion suggests that the determining factor is not the relative size or dollar value of an owner's interest in a parcel of land, but rather the creation by state law of a legitimate claim of expectation to that interest, however small. *Dow, supra,* p 204, n 19. Thus, the record owners' fractional shares in the land, each of which is only a small percentage of the whole, are no less property interests recognized as such by state law. Each such interest is, in our opinion, substantial enough to invoke the benefit of the statutory provision for notice. The failure to give each record owner of an interest in the land bid off to the state notice of the right of redemption leads us to conclude that compliance with MCL 211.131e; MSA 7.190(3) was never achieved.

The grantees of the DNR deed argue that an attack based on the notice requirement should be precluded by the laches of the record owners. We disagree for the reasons noted in *Richard v Ryno,* 158 Mich App 513, 517-518; 405 NW2d 184 (1987). Although this Court in *Richard* held that the defendants' laches would not excuse the plaintiffs' failure to properly give the notice given pursuant to MCL 211.140; MSA 7.198, we think that this holding has equal force when the notice is mandated by MCL 211.131e; MSA 7.190(3). A contrary result applying the nonstatutory defense of laches, derived from principles of equity, to excuse non-compliance with a statutory notice requirement, would be incongruous.

We conclude that the circuit court did not err by finding that the notice given to the record owners was deficient. Although the circuit court erroneously decided that MCL 211.140; MSA 7.198 was controlling, the notice given was improper because of the state's failure to comply with MCL 211.131e; MSA 7.190(3). However, the deficient notice does not render the title a nullity. Rather, the state became vested with "absolute title" pursuant to MCL 211.67; MSA 7.112, subject to the record owners' redemption rights, once the post-tax sale period provided by MCL 211.74; MSA 7.120 lapsed. Given the failure to effect proper notice of the redemption right provided by MCL 211.131c; MSA 7.190(1), a prerequisite to the expiration of the redemption period, it follows that the record owners' redemption rights remain extant. Thus, the title of the grantees of the DNR deed remains subject to the record owners' redemption rights.

A difficulty arises because of the interplay of the provisions of the General Property Tax Act and the Uniform Condemnation Procedures Act. The latter provides that title becomes vested in the agency seeking condemnation as of the date of the filing of the complaint if a motion to review necessity is not timely filed. MCL 213.57; MSA 8.265(7). Thus, there is no land left for the record owners to redeem; what is left is the matter of entitlement to the just compensation award. In light of the due process concerns noted in *Dow, supra,* we conclude that the right of redemption survives the change in title effected by the condemnation proceedings and attaches solely to the compensation award. On remand, the record owners shall be entitled to the compensation award to the exclusion of the grantees under the DNR deed, assuming that the record owners first exercise their redemption rights in

accordance with MCL 211.131e(3); MSA 7.190(3)(3).[6]

Remanded for further proceedings consistent with this opinion.

---

[6] Subsequent to the submission of this case on appeal, several of the record owners were dismissed as parties by orders of this Court pursuant to their stipulations. The stipulations indicate that these record owners have assigned their claims of interest to defendants-appellants Bugbee, Takacs, Creighton, and Johnson. Obviously, the relief granted by our decision is without effect to these record owners.